BENJAMIN L. MATTHEWS, APPELLEE, v. WILLIAM H. SOWLE, CELIA SOWLE AND HANNAH TIBBETS, APPELLANTS.

1. Principal and Agent: SALE BY AGENT. An agent employed for a *special* purpose derives from this no general authority from his principal. If such an agent exceed his authority the principal is not bound.

2. ———: ———. Where an agent with only special and limited authority to sell a tract of land for a fixed price in case he could sell it "*immediately,*" answered by letter that he could not sell it for that price, and requested permission to sell for considerably less, or if that were not given to "*let the matter drop;*" and afterwards, without any further communication with the owner of the land, sold it for the price at which it was first offered; *held,* That the sale was unauthorized and not binding upon the principal.

APPEAL from the district court of Jefferson county. The action was brought in that court to enforce the specific performance of an alleged contract for the sale of a tract of land in that county. The contract was as follows:

This contract made and entered into this 14th day of February, 1880, by and between W. H. Sowle of Los Angelos, California, party of the first part, and B. L. Matthews of Fairbury, Nebraska, party of the second part. The party of the first part agrees to sell to the second party for the sum of fifteen hundred dollars the following property situate in Jefferson county, Nebraska, to-wit: The south half of the south-east quarter of section six, town 1, range 2 east, and the north half of the

north-east quarter of section seven, town 1, range 2, east, all in Jefferson county, Nebraska. And the second party agrees to buy the said place at said sum. Said sum of money to be paid in cash down upon the first party executing and delivering to said second party a good and sufficient conveyance therefor. The first party agrees within a reasonable time to execute and deliver said conveyance to said second party.

Witness our hands this the day and year last above written.

W. H. Sowle, by

W. H. Snell, Agt.

B. L. Matthews, by

A. W. Matthews, Agt.

Endorsed on the back: "Fairbury, Nebraska, Feb. 14th, 1880. Rec'd on the within contract the sum of $500."

W. H. Sowle, by

W. H. Snell, Agt.

On the same day there was paid on said contract the sum of $500, and plaintiff took possession of the premises. Afterwards, and before commencement of this suit, he tendered the balance of purchase price, $1,000.00. The defendants all denied that Snell was their agent with power to bind them by contract, or that A. W. Matthews was the agent of the plaintiff with authority to bind him by the contract. They further allege that prior to the alleged sale to plaintiff, there was a bona fide sale of the land in controversy by Wm. H. Sowle and wife to the defendant, Hannah Tibbets, and this last named defendant, besides her answer, filed a cross bill asking that the pretended sale to plaintiff may be declared null and void, and for other relief. Trial had before Weaver, J., and decree for plaintiff. Defendants appeal.

*S. N. Lindley (Marquett, Deweese & Hall* with him), for appellants.

1.   The contract must be clearly proved. 2 Story's Equity, 751, 764.   Pomeroy on Contracts, sec. 136.

2.   There can be no contract unless the parties thereto assent, and they must assent to the same thing in the same sense.   1 Parsons on Contracts, 399, 400, 401, 402. *McCotter v. Mayor*, 37 N. Y., 325.   *Trevor v. Wood*, 36 N. Y., 307.   *Brittain v. Phillips*, 24 Howard, N. Y., 171. Pomeroy on Contracts, sec. 64.   Even when parties think they have agreed and made a contract, if, in fact, they at the time of its execution intended it in a different sense, there is no contract.   *Scranton v. Booth*, 29 Barb., 171. *Baldwin v. Mildeberger*, 2 Hill, 176.   Still further, if, instead of rejecting, Snell had *accepted* the offer, yet, if he ended by asking the plaintiff's assent, as he unquestionably does, there is no contract till the assent is obtained. *Hough v. Brown*, 19 N. Y., 111.   Pomeroy on Contracts, sec. 63 and notes.

3.   If there was no contract then there could be no partial performance,   The alleged payment of $500 and the possession taken by A. W. Matthews with the assistance of Snell under such very suspicious circumstances of haste count for nothing.   Pomeroy on Contracts, sec. 115.   *Philips v. Thompson*, 1 John. Ch., N. Y., 131.   *Parkhurst v. Van Cortland*, 1 John., 273.   *Lord v. Underdonk*, 1 Sand. Ch., 579.   Payment of the consideration will not cure a contract which is not in itself complete and valid at law.   *Rhodes v. Rhodes*, 3 Sand. Ch., 279.   *Sites v. Keller & Skinner*, 6 Ohio, 489.   *Blanchard v. McDougal*, 6 Miss., 165.   *Knoll v. Harvey*, 19 Miss., 111.   *Wagoner v. Booger*, 3 Met., 209.

*Slocumb & Hambel* and *W. H. Snell*, for appellee, argued mainly from the evidence alone to support the decree below, contending that Snell was the general agent of W. H. Sowle, with respect to everything pertaining to the land and especially for the purpose of making a sale of it on terms most advantageous to Sowle;

that at *no time* did it appear that said Snell *ever refused*, *or declined* to act as agent for the sale of the land; that Snell's letters referred to, as containing a "prompt and emphatic refusal" on his part to act as such agent, was *of itself* corroborative testimony showing that he accepted the agency and was using his utmost endeavors in the interest of Sowle to sell the land; and in that letter reported an offer to Sowle of $1,300, as he had no authority himself to close a sale for less than $1,500 without Sowle's consent.

LAKE, CH. J.

In our view of this case the judgment of the district court cannot be upheld. The principal question presented, and the one on which our decision must turn, is as to the authority of W. H. Snell to make the alleged sale. If such authority were conceded, or could reasonably be found from the evidence, we should not hesitate upon the other points to uphold the sale and affirm the judgment. There is no ground for claiming that Snell was the general agent of the defendant. As to the land in question, in the matter of selling or negotiating a sale of it, his agency was special and depended entirely upon the approval of his principal. Snell's own letters to Sowle, as well as those written in answer, show this to be so. With this understanding of the relation of Snell to the owner of the land, a correct solution of the question of authority is not, as it seems to us, at all difficult.

It is claimed that authority to make the sale is sufficiently established by a letter written by Sowle to Snell, of which the following is a copy:

LOS ANGELOS, CAL., Jan. 19th, 1880.

MR. SNELL—*Dear Sir:* Received your letter of Jan. 6th, 1880. Mr. Crisp wrote me that Mr. Saxon would prosecute J. N. Thompson and others, if any, for stealing timber, and collect rents, etc., for the sum of $25. I told Mr.

26

Crisp to get the rent and employ Mr. Saxon and pay him the $25. But it seems by some means Mr. Saxon was not employed, and that you have been employed in his stead. I'm very ignorant so far and would like to know and must know the particulars. Have you received the $25 from Eli C. Crisp? If not, what will your charges be? I want to know in particular who it is that wants to buy the place. There is several parties here who are dissatisfied with this country and are going back to Nebraska in the spring, as they have disposed of their property here, and they say, that they would rather have twenty-five acres of my land, as 1,000 acres here to farm, if it is as good as I represent it. But I suppose it would not show to an advantage, like it did, when I left there. Rather than to trouble myself any more about the place, and that my business here is much more important, and after reflecting upon the matter, I have concluded to take $1,500, fifteen hundred dollars, and if it can be sold for said sum do so, if not, I shall come back immediately and look into the matter thoroughly, or I will sell it to my sister, Mrs. Tibbets, then she will look into the matter more particularly than I do. I have not heard from Crisp for three months, though I have written to him several times. Answer immediately.

W. H. Sowle,

Much of this letter relates to matters other than the proposed sale, but we regard the whole of it as valuable, tending as it does to show the brief business connection between these parties, and their true relation to each other respecting the land. The letter was written in answer to one from Snell, under date of January 6th, in which he said he "could get $1,300 for the place," and asked if he might sell it for that sum. If upon the receipt of this letter, to which an answer was required *immediately*, Snell had made a sale for the proposed price thus sent to him, undoubtedly Sowle would have been

Matthews v. Sowle.

bound by it. But he did not do so. On the contrary he refused to act upon the offer in the most unqualified terms, as is shown by the following extract from his letter written in reply, dated January 27th, 1880. "I can get you $1,300 for your place, and that is all I can get. If you don't take this and take it now, I don't know that I can ever get it. It is bound to be sold some time to pay off the debts, and if you don't sell at private sale, it will be sold by the sheriff at court, and then I doubt if it brings $1,000. Now my advice to you as your attorney is, that you sell, and sell at $1,300 cash, if you can get it. Now if you want to do this, send me a power of attorney to sell at $1,300. Have it drawn up by an attorney there and properly witnessed and acknowledged, and signed by you and wife, and also have Mrs. Tibbets send me a power of attorney to release mortgage. If you do this, do it right off, if not, let it drop, and the land will be sold at forced sale, and then Mrs. Tibbets will not, hers being a second mortgage as I understand, get hardly anything out of it. It costs money to sell land under a foreclosure of mortgage and you ought to know it. I have written you plainly because I think you are foolish for not taking the $1,300 cash and getting what you can. Of course, if you don't sell now, and the land is sold by the sheriff, I will do all I can to get a big price, but I doubt if you get more than $1,000, if you get this, at sheriff's sale, and then the costs will have to be paid besides. If you sell answer by mail.

W. H. SNELL.

With no authority except such as may be inferred from this correspondence, Snell as the agent of Sowle, and in his name, on the 14th day of February, nearly a month after the offer to sell for $1,500 had been made, entered into the written contract, under which the plaintiff claims, for the sale of the land for $1,500, the price at which it had been rejected. It is very clear that he had no right

to do this. The offer made by Sowle was not a continuing one. It was made with the intention clearly expressed, that if accepted at all, it must be done "immediately." It was not accepted, but, as we have seen, rejected. Thereupon, unless renewed, it was at an end, and a subsequent acceptance of no avail. An assent to a proposition to sell, as is well expressed in Benjamin on Sales, sec. 39 (c), "must, of course, be such as to conclude an agreement or contract between the parties. And to effect this, it must in every respect meet and correspond with the offer, neither falling short of, nor going beyond, the terms proposed, but exactly meeting them at all points and closing with them just as they stand." And further in the same section: "If a condition be affixed by the party to whom the offer is made, or any modification or change in the offer requested, this constitutes in law a rejection of the offer, and a new proposal, equally ineffectual to complete the contract until assented to by the first proposers. Thus, if the offer by the intended vendor be answered by a proposal to give a less sum, this amounts to a rejection of the offer, which is at an end, and the party to whom it was made cannot afterwards bind the intended vendor by a simple acceptance of the first offer." The case at bar is fairly within this rule. Snell was the medium of communication between Matthews and Sowle. Upon his suggestion he was, by Sowle's letter of January 19th, given the agency to make a sale at once and for a fixed price. This agency being special, could only be executed so as to bind the principal, by keeping strictly within the prescribed bounds. An agent employed for a special purpose derives from this no general authority from his principal. 1 Parsons on Contracts, 43. If such an agent exceed his authority the principal is not bound. Id., 40. It is the duty of persons dealing with a special agent to ascertain the extent of his authority; and the principal will not be

bound by any act of the agent not warranted expressly by or by fair and necessary implication from the terms of the authority delegated to him. Chitty on Contracts, 216. Sowle had neither said nor done anything from which Matthews could have supposed that Snell's authority exceeded that given by the letter referred to. By the terms of that letter, as we have shown, the authority was required to be exercised at once, which was not done, nor until nearly a month afterwards, at which time the agency had been positively renounced by Snell's letter of January 27th, and his authority terminated. There was a proposal by Sowle to sell for a given price, which was rejected. Accompanying the rejection was an offer of a less price, which was refused, and this was followed by an acceptance of the first proposal.

Upon the facts of this case it is impossible to say that, at the time of entering into the contract for the sale of this land, Snell had any authority whatever to make it. It was a void act. For these reasons the judgment must be reversed and the action dismissed at the costs of the plaintiff.

REVERSED AND DISMISSED.