## NORFOLK NATIONAL BANK v. MINNA NENOW.

FILED JANUARY 19, 1897.   No. 6971.

1. **Pledge by Husband:** NOTICE OF WIFE'S TITLE: PROMISSORY NOTE. A father owned a negotiable note payable to his order, secured by a real estate mortgage. Before the maturity of the note he gave it to his daughter, and at the same time duly executed and delivered to her an assignment of the mortgage. The daughter delivered the note and mortgage assignment to her husband for deposit in a bank for collection. The husband borrowed money of the bank and pledged the note as security. *Held,* That the mortgage assignment accompanying the note was sufficient to put the bank on inquiry as to the husband's title to the note.

2. **Husband and Wife:** PRINCIPAL AND AGENT. A husband may act as the agent of his wife, but in order to bind her he must previously be authorized, or she must, with a knowledge of his acts, subsequently ratify them.

ERROR from the district court of Madison county. Tried below before JACKSON, J. *Affirmed.*

*Powers & Hays,* for plaintiff in error.

*Mapes & Hazen, contra.*

RAGAN, C.

In the district court of Madison county, Minna Nenow sued the Norfolk National Bank, alleging for cause of action that about October, 1891, she left with the bank for collection, a note which she owned; that the bank had collected the note and refused to pay to her its proceeds. The defense of the bank was that about the 1st of Janu-

ary, 1892, the husband of Mrs. Nenow became indebted to it for which he executed his note, and to secure the payment of the same he "turned over and caused to be assigned" to the bank the note of Mrs. Nenow, with her knowledge and consent, and that it had collected Mrs. Nenow's note and applied the proceeds to the husband's debt. Mrs. Nenow had a verdict and judgment and the bank has prosecuted here a petition in error.

1. The first argument is that the verdict is unsupported by sufficient evidence. The evidence is uncontradicted that on the 20th of June, 1887, one William Boche executed his note for $200, due two years after date, payable to the order of Carl Hille to whom said note was delivered, and secured the payment of the same by a real estate mortgage. Carl Hille was the father of the defendant in error, and sometime in January, 1888, he made her a present of this note and delivered it to her and at the same time duly executed and acknowledged and delivered to her an assignment of the mortgage securing the note. This note—the assignment of the mortgage being therewith, the note at the time not being indorsed by the defendant in error—was delivered by the husband to the bank as collateral security for a debt he owed it, and the note subsequently collected by the bank and the proceeds applied towards the liquidation of the husband's debt. There is a conflict in the evidence as to what indorsements were on the note at the time the bank received it; but the evidence tends very strongly to show that the note at that time was indorsed "Pay to the order of Minna Nenow. Carl Hille." The theory of Mrs. Nenow was—and the evidence introduced in her behalf tends to support it—that she placed this note in her husband's hands and instructed him to deposit it in the bank for collection; that she did this because her father had told her to do so; that soon after the note was so deposited she called at the bank and inquired if it had been collected and was informed that it had not; that she did not know that her husband was indebted to the bank;

that she never authorized him to collect the money on the note nor authorized him to pledge it as security for his debt; and that shortly before the suit was brought, upon inquiring of the bank if it had collected the note, she was informed by its officers that it had, and had applied the proceeds to her husband's debt; and this was the first intimation she had that her note had been thus disposed of by her husband. As already stated, the defense of the bank was that the note was assigned to it by Mrs. Nenow's husband, as security for his debt, with her knowledge and consent. There is not a word of evidence in the record to sustain this defense. About the 30th of December, 1891, the bank sent for Mrs. Nenow and induced her to execute to it an assignment of the mortgage securing the note; and the evidence introduced on its behalf tends to show that at that time some of the officers of the bank informed Mrs. Nenow that they held the Hille note as security and that she consented thereto. But the bank's evidence also shows that at this very time she told the bank officers that when the money was collected on the Hille note that it was hers; that her father had given it to her; and it is impossible to resist the conclusion that she executed this assignment to enable the bank to collect the money on the Hille note, expecting when it was done that the money would be paid to her; and subsequent to this time she called at the bank and asked for the money. Without quoting further from the evidence we think the verdict rendered is the only one that could have been rightly rendered. When this note was delivered to the bank by the husband, the assignment of the mortgage that accompanied it showed on its face that this note belonged to Mrs. Nenow. This was sufficient to put the bank on inquiry as to the husband's title to this note. The evidence sustains the verdict.

2. Another assignment is that the court erred in giving instruction No. 5 to the jury. This instruction was as follows: "If you find from a preponderance of the evidence that the plaintiff placed the note in controversy in

the defendant bank for collection, and for no other purpose, and that the defendant has collected the note and has failed to deliver to the plaintiff the proceeds thereof, and that the plaintiff was the owner of the note, then your verdict should be for the plaintiff." Counsel say that the instruction enunciated a correct principle of law but there is no evidence on which to base this instruction. This contention is groundless, as Mrs. Nenow testified that after her father gave her the note she talked with him about how it was to be collected; that she did not know what to do with it; that he told her to take it down and have the bank collect it; that she could not go there; she did not know "how to start," and that she had "her man" take it there. It is true that this testimony is not so concise as it would have been had this woman been an educated English lady,—as it seems that she was an illiterate German,—but nevertheless the evidence is clear enough for ordinary understanding. The court did not err in giving the instruction.

3. Another assignment is that the court erred in giving an instruction in the following language: "You are instructed that property coming to the wife by gift is not subject to the disposition of the husband, nor is it liable for his debts, unless she voluntarily pledges her property or creates a lien thereon for that purpose." There was no error in giving this instruction.

4. Counsel for the bank have argued this case throughout upon the theory that Mrs. Nenow put this note in the hands of her husband for collection by him. The bank pleaded no such defense nor is there any evidence in the record which tends to show such a state of facts. The evidence and all the evidence on the subject tends to show that the wife made the husband her agent for the special purpose of leaving this note with the bank for collection by it. The husband having this special authority was not thereby clothed by his principal with authority to collect the note, much less with authority to pledge it for his own debt. An agent employed for a

special purpose derives from this no general authority from his principal. If such an agent exceed his authority the principal is not bound. (*Matthews v. Sowle*, 12 Neb., 398.)

5. Counsel for the bank insist that even if the husband had not the authority which he exercised, nevertheless the bank was justified in assuming that he had such authority, because of the relation of husband and wife; and, was, therefore, justified in dealing with the wife's property found in the husband's possession as the husband's property. We cannot agree to this contention as applied to the facts of this case. Generally a husband may act as the agent of his wife, but in order to bind her he must previously be authorized to so act or she must, with a knowledge of his acts, subsequently ratify them. In the case at bar the husband was not authorized by the wife to make the disposition which he did of the Hille note, nor does the evidence show that the wife ratified his unauthorized act. Here the property of the wife in the husband's possession was a negotiable promissory note, probably indorsed payable to her order. With the note was an assignment of the mortgage which secured its payment made to the wife. This pointed definitely to the conclusion that the wife owned the note; and if there was not thereon an express indorsement to her, still the bank had no right to assume that the husband owned the note because in his possession. The judgment of the district court is right and is

AFFIRMED.